AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

V.

BENJAMIN ESPINOZA

**CRIMINAL COMPLAINT**

CASE NUMBER: 05M-101-JGD

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **February 7, 2005** in **Middlesex** county, in the District of **Massachusetts** defendant(s) did, (Track Statutory Language of Offense)

knowing and in reckless disregard of the fact that aliens had come to, entered, and remained in the United States in violation of law, transport and move, and attempt to transport and move, such aliens within the United States by means of transportation and otherwise, in furtherance of such violation of law

in violation of Title **8** United States Code, Section(s) **1324(a)(1)(A)(ii)**

I further state that I am a(n) **Special Agent, ICE** and that this complaint is based on the following
Official Title

facts:

See attached affidavit.

Continued on the attached sheet and made a part hereof:   ☐ Yes   ☒ No

_Signature of Complainant_

Sworn to before me and subscribed in my presence,

02-07-2005                                at                           Boston, Massachusetts
Date                                                                    City and State

JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE                         _Judith Gail Dein_
Name & Title of Judicial Officer                        Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT OF SPECIAL AGENT GLEN FITZPATRICK

I, Glen Fitzpatrick, having been duly sworn, do hereby depose and state as follows:

1. I am a Special Agent with Immigration and Customs Enforcement ("ICE"), formerly the United States Immigration and Naturalization Service ("INS"), and have been so employed since March of 1996. Among other duties, I am assigned to investigate alien smuggling organizations and practices.

2. I am aware that bringing in, harboring, and transporting an alien who is present in the United States in violation of law, is a violation of Title 8, United States Code, Section 1324 (a)(1)(A)(ii).

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and agents of this agency. This affidavit is not intended to set forth all of the information that I and other law enforcement personnel have learned during this investigation but is submitted in support of an application for a criminal complaint against BENJAMIN ESPINOZA ("ESPINOZA"), d.o.b. 02/06/65, charging him with a violation of 8 U.S.C. §1324 (a)(1)(A)(ii).

OVERVIEW OF ALIEN SMUGGLING

4. From my training, I know that, while no cases are alike, there are usually several different individuals and means of transportation that an alien will encounter throughout the smuggling route from their home country to the United States border, and then to the final destination within the United States from their home country.

5. For example, once a smuggled alien reaches the United States, the alien will usually be taken to a "safe house" or "drop house." Here, a group of smuggled aliens will wait until they can be moved either to their final destination or another "safe house." When the group is ready to be moved, they may be taken to a staging location at which point, they will meet one or more guides, also known as "coyotes," who will transport them to either another or their final locations.

6. Aliens also pay, in some form or fashion, in order to be smuggled into the United States. The manner and means of payment also vary. For example, an alien may pay a sum up front while still in their home country, and pay the balance upon reaching their final destination.

THE INSTANT OFFENSE/ENCOUNTER WITHIN THE UNITED STATES

7. On Monday February 07, 2005, ICE Boston observed a passenger van, white in color, bearing Texas license plate X25VZP, traveling northbound on Interstate 93 through Boston, MA.

8. The ICE Agent followed the van until it exited the highway and came to park at 2021 Revere Beach Parkway, Everett, MA.

9. When the Agent approached the van, the Agent observed a number of people in the van. The Agent identified himself and requested further information about the vehicle from the driver, who was later identified as AMBROSIO VILLAREAL, d.o.b. 12/02/56. VILLAREAL presented the Agent with a Texas drivers license and an Alien Registration Card. A passenger, seated in the front row passenger seat, later identified as ESPINOZA, a second driver, indicated they were transporting the "passengers" from Dallas, Texas to Massachusetts and other locations within the United States. The ICE agent on the scene, further identified the five "passengers" as Brazilian nationals. Three of the Brazilians had previously been arrested by Border Patrol on February 04, 2005, and at that time were determined to be illegally within the United States. The remaining two passengers were interviewed on

February 7, 2005 and were determined to be illegally within the United States.

THE PASSENGERS/ALIENS

10. During the course of this investigation, ICE agents determined that the five "passengers" were all Brazilian nationals who recently left Brazil, traveled to Mexico, and were now present illegally in the United States. Two of the five aliens had their Brazilian passport, which indicated that each recently traveled from Brazil into Mexico. Each passport had an admission stamp which indicated their entry into Mexico. None of the five aliens had a required United States visa or other form of immigration document to indicate a legal entry into the United States. None of the "passengers" had any luggage in the van.

11. During the course of the investigation, the five aliens were identified as (1) Silmar Jorge De ARAUJO, (2) Oziel Gomes DASILVA, (3) Marcelo Alves DASILVA, (4) Carlos Henrique LOPES, and (5) Tiago DE AZEVEDO.

12. Based upon information obtained from various interviews of the Brazilian nationals and from documents, it was determined that each of the aliens paid or agreed to pay a sum of money in order to be smuggled into the United

States. The amount of payment ranged between $2,000.00 and $10,000.00 in United States funds.

13. Each of the aliens arrived in Mexico and then were smuggled across the United States/Mexico border and were eventually transported to the Dallas, Texas area. In Dallas the aliens were met by ESPINOZA and VILLAREAL who drove the van which was ultimately encountered in Everett, MA. Originally there were seventeen "passengers" in the van. Twelve of the passengers were dropped off at various locations, including Georgia, New York, and North Carolina while en route to the Boston, MA area.

14. During the course of this investigation ESPINOZA produced a passenger list. This list contained, among other things, the names of the five "passengers" in the van at the time it was encountered; a destination; a telephone contact; and the fee, if any, to be collected by the drivers at the time of drop off. The letterhead on the list indicates a company name of "Mi Tierra". A copy of the list is attached as Exhibit A.

INTERVIEW WITH ESPINOZA

15. After being advised of his rights in his native language, and after agreeing to waive those rights, ESPINOZA spoke with investigators. A summary of the information provided by ESPINOZA is as follows: He admitted that he and

VILLAREAL were paid to drive the vehicle in question and its passengers from Dallas, Texas to Georgia, New York, and Massachusetts. He identified his boss as "GUILLERMO" LNU. The owner of the company he identified as "JESUS" LNU. ESPINOZA indicated he had made four other trips of the same type, transporting approximately the same number of persons. ESPINOZA stated that he was to be paid $500.00 for driving the van. ESPINOZA stated he is paid upon his return to the Dallas, Texas area.

16. With respect to this most recent trip, ESPINOZA stated that he could not understand the passengers, as they were not speaking Spanish. ESPINOZA stated that the passengers in the van were from Brazil. He stated that he did not ask them if they were illegal but that he believed they were based upon their inability to speak Spanish or English and the fact that none of the passengers had any luggage. ESPINOZA stated that he knew it was against the law to drive illegal aliens from Dallas, TX to Boston. ESPINOZA stated that he has been working for "MI TIERRA" for several months and that this is at least his fourth trip with passengers. ESPINOZA stated that he would go to the offices of MI TIERRA located on Mockingbird Lane in Dallas, Texas. ESPINOZA stated that a female named "CARMEN" LNU, who also works at "MI TIERRA", provided him with the

manifest which contained a list of names, which corresponded to the passengers in the van. Accompanying the manifest was $500.00 in expense money to be used for gas and tolls. ESPINOZA stated he was to be paid $500.00 for this trip upon his return to Dallas. ESPINOZA stated that prior to dropping the passengers off, he would place a call to the telephone contact on the list. A person would then meet the van and the passenger would be dropped off and, depending on what the passenger list indicated, ESPINOZA would collect the fee, if any. ESPINOZA stated that he would return to "MI TIERRA" and turn in any fees he had collected during the trip to "GUILLERMO" and it was at this time that "GUILLERMO" would pay ESPINOZA $500.00 in cash.

21. Based on the foregoing information, I believe probable cause exists to conclude that BENJAMIN ESPINOZA, d.o.b. 02/06/65, did, knowing and in reckless disregard of the fact that certain aliens have come to, entered, and remained in the United States in violation of law, transported or moved or attempted to transport or move such aliens within the United States by means of transportation or otherwise, in furtherance of such violation of law, in

violation of 8 U.S.C. §1324(a)(1)(A)(ii).

_____
Glen Fitzpatrick
Special Agent
United States Immigration
And Customs Enforcement

Subscribed and sworn to before me this 7th day of February, 2005.

_____
JUDITH G. DEIN
United States Magistrate Judge

TELF: MARTHA - 469853 45,14 /0414142 214 403 47 74

**transportes**

**MI TIERRA**

Febrero. 05 05

| # | Nombre | Destino | | Teléfono |
|---|--------|---------|---|----------|
| 1 | ELIZABETH | POMPANO BEACH | FL. | GSUALDO 754346 67 27 |
| 2 | ESDREAS | = | = | GSUALDO 954548 44 16 |
| 3 | JOSE ANTONIO | BENSON | NC. | JAMES 910 886 17 88 |
| 4 | ITAMAR | RIVERSIDE | 30 00 | VANIO 609327 99 13 |
| 5 | CRISTIAN PIRES | LONG BEACH | NY. | ALOBE 516889 31 57 |
| 6 | VALDI | ROCKLAND | MA. | ROBERTO 781831 47 23 |
| 7 | JOEL | BROCKTON | MA. | CLEITON 508 587 8563 |
| 8 | FABIANA SANTOS | = | MA. | = |
| 9 | FABIANA GLZ. | = | MA. | = |
| 10 | JACKELINE | = | MA. 58 | = |
| 11 | LUCINEIA | = | MA. 40 | = |
| 12 | ELI ANGELA | = | MA. 8 K | = |
| 13 | SIOMAR | BOSTON | MA. | JONI 978879 83 66 |
| 14 | OZIEL | LOWELL | MA. | GENIE 914 224 13 18 |
| 15 | MARCELO | FRAMINGHAM | MA. | VALDECI 508 8161 22 05 |
| 16 | CARLOS ENRIQUE | FRAMINGHAM | MA. | DININA 508630 02 20 |
| 17 | TIAGO | EVERETT | MA. | LUCIANO 617387 06 70 |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |

OBSERVACIONES:

TOTAL COBRADO
TOTAL POR COBRAR
TOTAL                500
                     M.46382 3

CHOFER No. 1  BENJAMIN E. 214 403 3432    FIRMA Benjamin Cardozo/Andrade   X25VZP
CHOFER No. 2  ANDRESO                      FIRMA Benjamin Cardozo/Andrade

X
X

✎JS 45 (5/97) - (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet** _____ **U.S. District Court - District of Massachusetts**

**Place of Offense:** _____ **Category No.** __II__ **Investigating Agency** __ICE__

**City** __Everett__ **Related Case Information:**

**County** __Middlesex__ 
Superseding Ind./ Inf. _____ Case No. _____
Same Defendant _____ New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name __Benjamin Espinoza__    Juvenile  ☐ Yes  ☒ No

Alias Name _____

Address _____

Birth date (Year only): __1965__ SSN (last 4 #): _____ Sex __M__ Race: __Hispanic__ Nationality: __U.S.__

**Defense Counsel if known:** _____ **Address:** _____

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** _____ **Bar Number if applicable** _____

**Interpreter:** ☐ Yes ☒ No    List language and/or dialect: _____

**Matter to be SEALED:** ☐ Yes ☒ No

☐ Warrant Requested    ☐ Regular Process    ☒ In Custody

**Location Status:**

**Arrest Date:** __February 7, 2005__

☐ Already in Federal Custody as _____ in _____
☐ Already in State Custody _____  ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release: Ordered by _____ on _____

**Charging Document:**    ☒ Complaint    ☐ Information    ☐ Indictment

**Total # of Counts:**    ☐ Petty    ☐ Misdemeanor    ☐ Felony __1__

Continue on Page 2 for Entry of U.S.C. Citations

☒  I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

**Date:** _2/3/05_    **Signature of AUSA:** _Robert E. Richardson_

⬥JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant**   Benjamin Espinoza

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  8 U.S.C. § 1324 | Transporting illegal aliens | 1 |
| Set 2 | | |
| Set 3 | | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

**ADDITIONAL INFORMATION:**