UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) CRIMINAL NO. 05-10060-RCL |
| | ) |
| **BENJAMIN ESPINOZA** | ) |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION TO SUPPRESS**

The government respectfully opposes Defendant's Motion to Suppress. For the reasons that follow, the Court should deny the Motion.

**FACTS**

The government provides herewith a summary of the facts it expects to adduce at the hearing on the Motion. (The government reserves the right to elicit additional facts at the hearing itself.)

On February 7, 2005, Special Agent ("SA") Glen Fitzpatrick of Immigration and Customs Enforcement ("ICE") was traveling northbound on I-93 in Boston when he saw a large passenger van bearing Texas license plate X25VZP traveling in the same direction. SA Fitzpatrick was aware that similar vans bearing Texas plates had been found recently to be transporting illegal aliens to the Boston area. SA Fitzpatrick contacted Sector Communications and learned that the van was registered to an individual named Jesus Zendejas, whose name had come up the previous September in an investigation into illegal alien

smuggling.[1]  SA Fitzpatrick also could see that there appeared to be people in the passenger part of the van.

SA Fitzpatrick followed the van.  It exited I-93 and drove to the parking lot of a D'Angelo's Sub Shop located on the Revere Beach Parkway in Everett, Massachusetts, where it came to a stop.

SA Fitzpatrick approached the stopped van, identified himself, and asked the driver to provide identification.  The driver, Ambrosio Villareal, produced a Texas driver's license.  SA Fitzpatrick asked for further identification, and Mr. Villareal produced an alien registration card, or "green card," as well as a business card bearing the name "Mi Tierra Transportes."

SA Fitzpatrick then asked the man sitting in the front passenger seat, who proved to be the defendant, if he had identification.  The defendant produced a Texas driver's license.  SA Fitzpatrick asked if he had a "green card" and the defendant told him he did not and that he was a naturalized United States citizen.  The defendant showed SA Fitzpatrick a photocopy of a certificate of naturalization.  SA Fitzpatrick asked the defendant if he was another driver of the van and the defendant indicated that he was and that he and Mr. Villareal worked for "Mi Tierra."  SA Fitzpatrick asked the defendant about the

---

[1] Telephone toll records that were reviewed in connection with that case revealed a call to a telephone number for which Mr. Zendejas was the subscriber.

2

passengers, whom SA Fitzpatrick could see sitting in the back of the van when he approached it. The defendant told SA Fitzpatrick that they were from Brazil and that he and Mr. Villareal had driven them all the way from Dallas.

SA Fitzpatrick then spoke to the passengers in Portuguese. They all told SA Fitzpatrick they were from Brazil. SA Fitzpatrick asked if any of them had documentation indicating permission to be in the country and none of them indicated that they did. SA Fitzpatrick asked for their passports. Two of them provided Brazilian passports and the other three provided notices to appear for removal proceedings indicating that they had been arrested by the U.S. Border Patrol on February 4, 2005 for being present illegally in the United States.

SA Fitzpatrick then advised both Mr. Villareal and the defendant of their <u>Miranda</u> rights in Spanish. The defendant thereafter made further statements to SA Fitzpatrick.

## ARGUMENT

The defendant argues that the stop of the van and the inquiry that followed violated his Fourth Amendment rights, and that all information gained as a result, including through the interview of the defendant, must be suppressed as fruit of the poisonous tree. <u>See</u> <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963). The defendant is wrong on two accounts.

First, SA Fitzpatrick did not "stop" the van. To the

contrary, he simply approached a vehicle that the driver, Mr. Villareal, had already brought to a stop on his own.

The approach of an already-stopped vehicle is not a Fourth Amendment seizure. In an analogous context, in <u>Florida v. Bostick</u>, 501 U.S. 429 (1991), the Supreme Court held that drug investigators do not "seize" a person within the meaning of the Fourth Amendment when they board a bus and ask a passenger as to whom they have no articulable suspicion if he will provide his ticket and identification. The Supreme Court further held that such investigators do not effect a seizure when they then ask for consent to search the passenger's luggage. The Court observed that, ever since <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), the Court had held repeatedly that mere police questioning does not constitute a seizure, and held in <u>Bostick</u> that the mere fact that questioning occurs in the close confines of a bus does not convert the encounter into a seizure. The Court noted that the fact that the defendant did not feel free to leave the bus did not mean that the police had seized him but instead was the natural result of his own decision to take the bus.

The Seventh Circuit has likewise held that an officer's approach and questioning of a driver who has voluntarily stopped a vehicle is not a seizure under the Fourth Amendment. <u>United States v. Hendricks</u>, 319 F.3d 993, 999-1000 (7th Cir. 2003); <u>see also</u> <u>United States v. Davis</u>, 2002 WL 31430284 (7th Cir.

4

2002)("Interrogating automobile occupants can be more intrusive than questioning pedestrians -- for example, when the police stop a car in transit to make inquiries. [Cite omitted]. This disparity between automobile and pedestrian stops dissipates, however, when the police approach a car . . . that is already stopped of the driver's own volition. [Cites omitted].").

Here, the agent simply walked over to a van that the driver had already stopped of his own accord. The questioning that followed, and the observations regarding the illegal aliens in the van, did not convert the situation into a seizure. Indeed, SA Fitzpatrick's initial approach was to the driver's side, where he began by speaking with Mr. Villareal. The defendant, who was sitting in the passenger seat, had an even greater opportunity than did the defendant in <u>Bostick</u> to leave the vehicle at that point. The fact that he may not have felt free to do so was not the result of anything SA Fitzpatrick did but rather was a result, as in <u>Bostick</u>, of the defendant's own decision to travel in the van.

Second, even assuming <u>arguendo</u> that SA Fitzpatrick's approach of the van had constituted a seizure for Fourth Amendment purposes, SA Fitzpatrick reasonably suspected that the van was transporting illegal aliens: the van was both of a type and from a location consistent with the agent's recent past experience of such transporting; the van was registered to a man

5

whose telephone number had been dialed in connection with a past investigation into such transportation; and the agent could see as he approached the van that there were a number of passengers in the back.  While it was possible that the agent's suspicions were unfounded and the defendant's conduct innocent, Terry itself expressly recognized that suspicious actions can be ambiguous and that the police lawfully may perform a brief investigatory seizure to resolve the ambiguity.  As the Supreme Court stated in Illinois v. Wardlow, 528 U.S. 119 (2000), in response to an argument that flight from the police is not necessarily indicative of ongoing criminal activity:

> This fact is undoubtedly true, but does not establish a violation of the Fourth Amendment.  Even in Terry, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation.  The officer observed two individuals pacing back and forth in front of a store, peering into the window and periodically conferring.  [Citation omitted].  All of this conduct was by itself lawful, but it also suggested that the individuals were casing the store for a planned robbery.  Terry recognized that the officers could detain the individuals to resolve the ambiguity.  [Citation omitted].
>
> In allowing such detentions Terry accepts the risk that officers may stop innocent people.  Indeed, the Fourth Amendment accepts that risk in connection with more drastic police action; persons arrested and detained on probable cause to believe they have committed a crime may turn out to be innocent.  The Terry stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further.  If the officer does not learn facts rising to the level of probable cause, the individual

>    must be allowed to go on his way.  But in
>    this case the officers found respondent in
>    possession of a handgun, and arrested him for
>    violation of an Illinois firearms statute.

528 U.S. at 125-26.  See also, e.g., Arvizu, 534 U.S. at 277 ("A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct" (citing Wardlow)); United States v. Brown, 334 F.3d 1161, 1168 (D.C. Cir. 2003)("[T]hat an individual's conduct is 'ambiguous and susceptible of an innocent explanation' does not mean that it may not be grounds for suspicion" (citing Wardlow)); United States v. Hishaw, 235 F.3d 565, 570 (10th Cir. 2000)("[E]ven ambiguous behavior, susceptible to an innocent explanation, may give rise to a reasonable suspicion of criminal activity depending on the totality of the circumstances." (internal quotation marks and citations omitted)).

   Here, based on the facts available to him at the time, SA Fitzpatrick reasonably suspected that the van was involved in transporting illegal aliens.  Accordingly, although he did not in fact stop the van, he would have been justified in so doing without doing violence to the defendant's Foruth Amendment rights.

**CONCLUSION**

    For the foregoing reasons, this Court should deny the Motion to Suppress.

                                  Respectfully submitted,

                                  MICHAEL J. SULLIVAN
                                United States Attorney

                By:  /s/Robert E. Richardson
                     Robert E. Richardson
                     Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

Suffolk, ss.                          Boston, Massachusetts
                                    April 11, 2006

    I, Robert E. Richardson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 11, 2006.

                                      /s/Robert E. Richardson
                                      ROBERT E. RICHARDSON